## MARVIN SPIKES ET AL. v. STATE OF MISSISSIPPI.

[54 South. 1.]

1. ADULTERY. · *Unlawful cohabitation.* *Section* 1029, *Code* 1906.

> In order to establish the offense defined by section 1029, Code 1906, it must be shown that the parties, whether dwelling together or not, habitually indulge in sexual intercourse.

2. SAME.

> It is not necessary that the parties shall dwell together or publicly avow the relationship existing between them. It is sufficient to show that relationship which, whether avowed or concealed, if publicly known would characterize the woman as mistress of the man. It is habitual concubinage or lying together which constitutes the cohabitation meant by the statute.

3. SAME. *Occasional acts of intercourse.*

> Where a cohabitation, using the words in the usual sense, is shown, one or more acts of sexual intercourse clearly proven, or circumstances from which such intercourse would necessarily be inferred, · as sleeping together, would uphold a verdict of guilty. But in the absence of such cohabitation, it is not sufficient to prove occasional acts of sexual intercourse.

APPEAL from the circuit court, Harrison county.

HON. T. H. BARRETT, Judge.

Marvin Spikes and Mrs. B. B. Evans were convicted of unlawful cohabitation under section 1029, of Code 1906.

The facts are stated in the opinion of the court.

*J. H. Mize,* for appellant.

"This is a proceeding under section 1029 of the Code of 1906, and the intercourse must be habitual. *Granbery* v. *State,* 61 Miss. 440; *Brown* v. *State,* 8 South. Reporter 257.

If we should consider that all the testimony of the state is true, they have only shown two acts of intercourse,

and that was on the very day these parties were arrested; the charge having been made against them before these two acts were committed, that was on the 26th day of January, 1910, at B. B. Evans' house at night, and old man Carver's house in the morning.

*Thomas* v. *State,* 28 Texas App. 300, 11 S. W. 1098, is decisive of this case. It was a much stronger case, because there were a number of acts of intercourse.

To the same effect is *State* v. *Cassida,* 67 Kansas 171, 72 Pac. 522; and the repeated decisions of this state hold that occasional acts on intercourse does not constitute the crime, and we think the state failed to make out a case in this case, and the verdict is contrary to the law and evidence in this case.

*James R. McDowell,* assistant attorney-general, for state.

I refer your honors to vol. 1, A. and E. Enc. Law, 2d Ed., page 72, where it is said: "From the nature of the offense, adultery is not, save in exceptional cases, susceptible of direct and positive proof. It can more often be established by evidence more or less circumstantial in its nature." And further, "Hence, it is considered that direct proof of carnal knowledge is not necessary. It is sufficient to show circumstances from which the jury may reasonably infer the guilt of the parties."

See similar treatment of the subject on page 1124, vol. 13, A. and E. Enc. 2d Ed., under the head of fornication.

It has been held that a verdict of guilty would be sustained although the guilty acts could only be proven on one day, if stopped by arrest, if it is reasonable to conclude from the evidence that it was the purpose of these parties to continue their unlawful relations. Here, it is shown that there was ample opportunity for this connection to continue over a great length of time. And I submit that the evidence shows that this was but a continuance of what had already existed.

McLain, C.

Appellants were convicted of unlawful cohabitation in the circuit court of Harrison county, Miss., and from that conviction and sentence they appeal to this court.

We will first give a few of the leading facts as disclosed by the record. Mrs. Evans was living in the country with her husband. On account of domestic troubles, she left her husband the latter part of June, 1909, and went to her mother's home in Gulfport. Her mother was keeping a boarding house. Mrs. Evans stayed with her mother, working in a laundry and a store. While in Gulfport, the testimony shows that Marvin Spikes was in her company quite often, and visited her occasionally at her mother's boarding house. On one occasion he was seen to give her some money. While she was in Gulfport, no acts of sexual intercourse or undue intimacy between her and Spikes were shown. About the middle of December, 1909, she went out in the country to a friend's, a Mr. Carver's, and remained there about three or four weeks. While there, Spikes came out two or three times, and they seemed pleased to be in each other's company. On the morning of January 26, 1910, Mrs. Carver and husband claimed to have seen defendants under such circumstances that strongly suggested that they had had, or were about to have, sexual intercourse with each other. On the following night they were watched by B. B. Evans, husband of appellant, Mrs. B. B. Evans, and by two other parties. These parties claim to have seen them indulging in sexual intercourse. A few moments after this occurrence these appellants were arrested by the deputy sheriff, by warrant based upon affidavit sworn to by her husband. It seems the deputy sheriff had this warrant in his possession during that entire day. What was done with the legal proceedings the records does not disclose. However, at the next term of the Harrison county circuit court, the defendants were indicted for unlawful cohabitation, under

section 1029, Code 1906, which provides that: "If any man and woman shall unlawfully cohabit, whether in adultery or fornication, they shall be fined in any sum not more than five hundred dollars each, and imprisoned in the county jail not more than six months; and it shall not be necessary, to constitute the offense, that the parties shall dwell together publicly as husband and wife, but it may be proved by circumstances which show habitual sexual intercourse."

This section of the Code has been thoroughly considered in the case of *Granberry* v. *State,* 61 Miss. 440, and the construction then given it this court has uniformly followed, and will do so in the consideration of this case. The court in that case said, among other things: "It is probably sufficiently accurate to say that it condemns the state of concubinage in which the parties, whether dwelling together or not, habitually indulge in sexual intercourse. It is not necessary that they shall dwell together, nor that they publicly avow the relationship which exists between them. It is sufficient to show that condition or relation, whether it be avowed or concealed which if publicly known would lead men to characterize the woman as the mistress of the man. It is habitual concubinage or lying together which constitute the cohabitation meant by the statute. Where a cohabitation, using the word in its usual sense, is shown, one or more acts of sexual intercourse clearly proved, or circumstances from which the fact of such intercourse would necessarily be inferred, as that the parties slept in the same bed, would uphold a verdict of guilty; but in the absence of evidence of such cohabitation or living together it is not sufficient to prove occasional acts of sexual intercourse. It is necessary to prove such intercourse so often repeated as to become habitual, or circumstances indicating that it is habitual."

Testing the facts of this case, as disclosed by the whole record, by the above statute and the construction of same

by this court, there was no cohabitation between these defendants in the ordinary meaning of the word, nor are the two proven acts of sexual intercourse, coupled with all the other facts and circumstances in evidence, sufficient to characterize the defendant Mrs. Evans, "with any accuracy of speech," as the mistress of defendant Spikes. "It is the habitual concubinage or lying together which constitute cohabitation meant by the statute." Assuming all the testimony as true, and all that may be fairly inferred from it we are of the opinion the guilt of the defendants is not established.

We think the case should be reversed and remanded.

*Reversed and remanded.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and, for the reasons therein given by the commissioner, the case is reversed and remanded.